# Modern Woodmen of America v. Lemonds, et al.

(Decided December 18, 1925.)

## Appeal from Fulton Circuit Court.

1. **Insurance—No Liability on Policy where Death of Insured Caused by Engaging in Prohibited Occupation.**—Fraternal society was not liable on insurance policy issued by it, where insured was engaged in occupation of telephone lineman, prohibited by policy, and his death was traceable to such occupation.

2. **Trial—Error to Assume Conflict in Evidence, where Evidence, though Slight, was Uncontradicted.**—Where there was nothing to contradict evidence, though slight, showing insured to be engaged at time of injury and death in prohibited occupation, the court erred in assuming a conflict in evidence, and submitting question to jury.

TRUMAN PLANTZ, GEORGE G. PERRIN and HENRY F. TURNER for appellant.

HEBER FINCH for appellee.

OPINION OF THE COURT BY JUDGE SAMPSON—Reversing.

Appellees, George W. Lemonds and wife, Malinda C. Lemonds, instituted an action in the Fulton circuit court to recover $1,000.00 upon a policy of insurance or benefit certificate issued to their son, George D. Lemonds, by the appellant society in which appellees were the beneficiaries, the son having died since the issual and delivery of the policy and at a time when all the premiums and dues thereon had been paid. With the petition is filed the original benefit certificate sued on and it was made a part of the pleading, so also were filed copies of the by-laws of the Woodmen of America, revision in 1917 and re-revision of 1921, and these were made a part of the pleading.

The fraternal society answered and denied its liability upon the certificate and relied upon several different defenses. It averred that the insured before and at the time he obtained the certificate, filed a written application with the society, agreeing to abide all the conditions, agreements, laws and rules of the order with respect to the benefit certificate, and then averred:

"That its said by-laws in force at the time said benefit certificate was issued and continuously there-

after to the present time, have provided, among other things as follows:

"Sec. 19. Any person who is engaged in or who regularly, occasionally or during any part of the year, performs any work or duties necessary or incident to or at or directly about any place where the work or duties necessary or incident to any of the following named occupations are performed at any time, shall not become a beneficiary member of this society under any conditions whatsoever:

"Electric car, power, light or telephone lineman.

"Engaging in or entering on, or continuing in any of the occupations or employments enumerated in section 19 of these by-laws by any beneficial member of this society heretofore or hereafter admitted to such membership shall totally exempt said society from any and all liability to such member, his beneficiaries on account of the death of such member, directly traceable to employment in such hazardous occupation. A person shall be held to be engaged in any of the hazardous or prohibited occupations in this chapter mentioned whenever he, with or without compensation, regularly, occasionally, or during any part of the year performs any work or duties necessary or incident to said hazardous or prohibited occupation.

"Defendant avers that after issuance of said benefit certificate to him, the said George D. Lemonds entered upon and engaged in the occupation electric power, light, or telephone lineman, and that the death of the said George D. Lemonds was directly traceable to employment in such occupation. . . .

"Defendant, further answering, now pleads and relies upon the provisions of said application of George D. Lemonds and the statement and answers therein contained, and pleads and relies upon the provisions of said benefit certificate issued to him, and the by-laws of this defendant, together with the allegations and averments heretofore set forth, as a complete bar to plaintiff's right to recover in this action."

Except for the statement of R. S. Gregory, an electrician of Greenville, Kentucky, there is but slight evidence upon the subject of how young Lemonds came to his death. After stating that he was acquainted with Dewey

Lemonds, the insured, during his lifetime, the witness Gregory was asked:

"Q. State whether or not you were present and saw the accident that caused the death of Dewey Lemonds? A. Yes, sir.

"Q. Now, in your own way, tell if you did see this accident, how it occurred? A. Well, at the time of the accident I was sitting in the classroom at school; when I first noticed the man at work I had the impression that he was smoking a cigarette because a small cloud of smoke arose from his body. I glanced back into the school room for an instant and when I again looked at the man I saw him fall from the pole to the ground. I arose and went out of the school building to the man. I dragged him from the ditch, turned him on his stomach, pulled his tongue out of his mouth and administered artificial respiration.

"Q. State whether or not you were looking out of the school building at the time Dewey Lemonds fell from the pole? A. Yes.

"Q. How far were you from him when this accident occurred? A. Two-thirds of a city block.

"Q. State if you know what kind of work Dewey Lemonds was engaged in at the time this accident occurred? A. Telephone work.

"Q. Describe, if you know, the kind of telephone work he was engaged in when this accident occurred? A. Generally termed 'trouble shooting' among telephone men.

"Q. State whether or not the duties of a 'trouble shooter' is to string wires, climb poles, and if it is, the duties of a general lineman? A. It is my impression that it is.

"Q. Just tell what this person was doing when you first noticed him? A. He was standing on the pole about half way up.

"Q. You state he was standing on the pole? Just tell how he was standing, and how he kept himself from falling from the pole. A. He had his back turned to me but he had on spurs.

"Q. State whether or not he was standing on this pole by means of spurs that are used by ordinary telephone linemen? A. I don't know; the pole may have steps on it.

"Q.   You stated that you saw him after he fell to the ground?   State whether or not he had on spurs at that time.   A.   Yes, he had them on when I found him.

"Q.   State if you know what he appeared to be doing with his hands at any time you saw him just prior to the time he fell?   A.   I couldn't see his hands.

"Q.   You state when you first noticed him there appeared to arise from him a cloud of smoke.   Do you have any opinion as to what caused this smoke? If so, state to the court?   A.   The smoke was steam arising from his damp shirt being in contact with the wire.

"Q.   In your opinion would steam arise from his shirt if it should come in contact with a wire not charged?   A.   No.

"Q.   As an electrician, in your opinion, was this party electrocuted by coming in contact with a live wire while attempting to climb the telephone pole he fell from?   A.   No, you couldn't say he was electrocuted until resuscitation had been kept up for at least an hour and a half.

"Q.   Don't you think that this party by coming in contract with a live wire was the direct cause of his death?   A.   No, I think it was caused by falling from the pole.

"Q.   But coming in contact with the live wire caused Lemonds to fall from the pole, did it not?   A. It did.

"Q.   State whether or not, if you know, how long Dewey Lemonds had been engaged in the work he was engaged in at the time of his death?   A.   I don't know.

"Q.   Did you see Dewey Lemonds climb the telephone pole?   A.   No.

"Q.   Then, if I understand, all that you know about this accident was that you noticed him on the pole, with his spurs on, fall to the ground and later went to his assistance and found that he was dead, or almost dead, state whether or not this is so?   A. Yes."

By the terms of the policy the fraternal society was not to become or be liable upon the benefit certificate for death resulting or occurring while the insured was en-

gaged in any of the several prohibited occupations named in the policy, if death was directly traceable to such occupation. One of the prohibited occupations was lineman for a telephone or telegraph company. As there was no dispute about young Lemonds being in the employ of the telephone company and there was no evidence to show that he was not upon the telephone pole in the way and manner stated by the witness Gregory immediately before he fell and died, it must be assumed as proven that young Lemonds was in truth and in fact engaged as a lineman and was at the time of his injury and death pursuing that occupation, contrary to the provisions of the benefit certificate sued on. As there was no evidence to the contrary upon this exact question there was nothing to submit to the jury, and the trial court erred in assuming that there was a conflict in the evidence, and in submitting the question of fact to the jury. The motion of appellant society for a directed verdict in its favor should have been sustained. In overruling the motion reversible error was committed by the trial court. If upon another trial the evidence is in substance the same as upon the last trial the court will direct a verdict for the society.

For the reasons indicated the judgment is reversed for new trial in conformity to this opinion.